Opinion filed March 24,
2011

 

                                                                       In The

                                                                              

  Eleventh
Court of Appeals

                                                                   __________

 

                                                         No. 11-09-00311-CR

                                                    __________

 

                                 RICKY SOTO STOKES, Appellant

                                                        
V.

                                     
STATE OF TEXAS, Appellee



 

                                   On
Appeal from the 350th District Court

 

                                                            Taylor
County, Texas

 

                                                    Trial
Court Cause No.  09030D

 



 

M
E M O R A N D U M   O P I N I O N

Ricky
Soto Stokes was indicted for possession of less than a gram of methamphetamine. 
The jury found Stokes guilty, and the trial court assessed his punishment at
sixteen months in a state jail.  We affirm.

I.  Background
Facts

Stokes
was on parole and was required to give a monthly urine specimen.  Martin
Hernandez, Stokes’s parole officer, was monitoring Stokes while Stokes provided
a specimen when he noticed Stokes act unusually.  Stokes had turned his body so
that Officer Hernandez could not adequately see, and Stokes appeared to be
nervous.  Officer Hernandez directed Stokes to drop his pants further.  When he
did so, Officer Hernandez saw a fake penis.  Officer Hernandez seized the fake
penis, some tubing, and a bag of urine from Stokes, and he took Stokes out of
the restroom and placed him in a chair in a cubicle.  Stokes kept his hands in
his pockets, and he still seemed very nervous.  Officer Hernandez called his
supervisor.  They spoke to Stokes for several minutes.  Officer Hernandez left
Stokes alone for less than a minute to wash his hands.  When he returned, he
saw something by Stokes’s right foot.  Officer Hernandez described it as a
video game cartridge.  Officer Hernandez asked Stokes if it was his.  Stokes
said no.  The cartridge contained several small baggies.  The baggies contained
a trace amount of powder.  The powder was tested and was determined to be
methamphetamine.

II. 
Issues

Stokes
raises two issues on appeal.  He argues that the evidence was legally and
factually insufficient to establish possession of methamphetamine.  Because of
the Texas Court of Criminal Appeals’s decision in Brooks v. State, 323
S.W.3d 893 (Tex. Crim. App. 2010), our review is restricted to the legal
insufficiency issue.[1]  

III.  Was the Evidence Legally Sufficient?

To
determine whether evidence is legally sufficient, we review all of the evidence
in the light most favorable to the verdict and determine whether any rational
trier of fact could have found the essential elements of the crime beyond a
reasonable doubt.  Jackson v. Virginia, 443 U.S. 307 (1979).  The
factfinder is the sole judge of the credibility of the witnesses and the weight
to be given their testimony.  Adelman v. State, 828 S.W.2d 418, 421
(Tex. Crim. App. 1992).  

Stokes
argues that there was insufficient evidence to link him to the trace amount of
methamphetamine found near his foot.  When, as here, the contraband is not
found on the defendant’s person or a place he exclusively possesses, it may
still be affirmatively linked to him through independent facts and
circumstances.  Brown v. State, 911 S.W.2d 744, 745-48 (Tex. Crim. App.
1995).  Affirmative links are circumstances, in addition to presence, that
justify the conclusion that the defendant knowingly possessed the contraband.  Evans
v. State, 202 S.W.3d 158, 162 (Tex. Crim. App. 2006).  Circumstances that
can link a defendant to contraband include the following:  (1) that the
defendant was present where the substance was found; (2) that the contraband
was in plain view; (3) that the contraband was found in proximity to and was
accessible to the defendant; (4) that the defendant was under the influence of
the drugs; (5) that the defendant possessed other contraband; (6) that the
defendant made incriminating statements; (7) that the defendant attempted to
flee; (8) that the defendant made furtive gestures; (9) that there was an odor
of contraband present; (10) that the defendant owned or had a right of
possession to the place where contraband was found; (11) that the drugs were
found in an enclosed space; and (12) that the defendant had a large amount of
cash.  Id.  

The
game cartridge was found in plain view, near Stokes’s right foot.  The State
did not take a urine sample from Stokes, but the jury could infer that he was
using drugs because of his attempt to cheat on the test.  Stokes did not
possess any other contraband, make any incriminating statement, or attempt to
flee.  There was no odor of contraband, he did not own or have a right of
possession to the cubicle, and there was no evidence of how much cash he had. 
Stokes was, however, visibly nervous while sitting in the cubicle, and he kept
his hands in his pockets.  The game cartridge was found next to Stokes’s foot,
was found immediately after he was left alone, and had not been noticed previously
by Officer Hernandez or his supervisor.

Stokes
argues that his possession of a fake penis is not a link to the game cartridge,
and he relies upon Allen v. State, 249 S.W.3d 680 (Tex. App.—Austin
2008, no pet.), for the proposition that possession of one item of contraband
does not necessarily link a defendant to possession of a different type of
contraband.  With this we agree.  If the fake penis had been found in different
circumstances, its probative weight could be easily discounted.  But because Stokes
was attempting to use it to defeat a drug test, it is probative to explain his
actions immediately before and after his test.

Stokes
next argues that we should give little, if any, consideration to the fact that
the game cartridge was found near his foot because (1) no one saw him put
anything on the floor, (2) Officer Hernandez did not inspect the cubicle
before seating Stokes, (3) his fingerprints were not on the cartridge, and (4) several
people had access to this area.  Stokes is correct that each of these facts
provides a reason why the jury might discount the proximity of the cartridge to
his foot, but there was also evidence supporting a connection.

Officer
Hernandez described the cubicle’s size by reference to objects in the courtroom,
and so we unfortunately can draw little conclusion from that testimony.  But
the State did introduce into evidence a picture of the cubicle.  That picture
confirms that the cubicle is a small, uncluttered area and that it would be
easy to notice anything placed on the floor.  Officer Hernandez acknowledged
that he did not search the cubicle before seating Stokes.  He did, however,
also testify that nothing caught his eye when he accompanied Stokes to the
restroom, that he did not see anything when he took Stokes to the cubicle, and
that he and his supervisor stood there and talked to Stokes for fifteen to
twenty minutes.  The first time Officer Hernandez saw anything on the ground
was after briefly leaving Stokes alone.  The jury could have reasonably concluded
that Stokes dropped the cartridge on the floor while he was left unattended or
that the State failed to carry its burden of proof depending upon the jury’s
assessment of Officer Hernandez’s credibility.  Because we cannot second-guess
that determination, we must assume that the jury found his credibility
favorable.  If so, they could consider the cartridge’s proximity to Stokes’s
foot.

Considering
the evidence in the light most favorable to the verdict, a rational factfinder
could have found beyond a reasonable doubt that Stokes possessed the trace
amount of methamphetamine found near his foot.  The evidence is legally
sufficient to support Stokes’s conviction, and his two issues are overruled.

IV. 
Conclusion

The judgment of the
trial court is affirmed.  

 

            

RICK STRANGE

                                                                                    JUSTICE

 

March 24, 2011

Do not publish. 
See Tex. R. App. P. 47.2(b).

Panel consists of:  Wright, C.J.,

McCall, J., and Strange, J.









                [1]In Brooks, the court held that there is “no meaningful distinction
between the Jackson v.
Virginia legal-sufficiency standard
and the Clewis factual-sufficiency standard”; that the Jackson v.
Virginia standard is the “only standard that a reviewing court should apply
in determining whether the evidence is sufficient to support each element of a
criminal offense that the State is required to prove beyond a reasonable
doubt”; and that “[a]ll other cases to the contrary, including Clewis,
are overruled.”  323 S.W.3d at 894, 902, 912 (citing Jackson v. Virginia,
443 U.S. 307 (1979), and Clewis v. State, 922 S.W.2d 126 (Tex. Crim.
App. 1996)).  We note that Stokes did not have the benefit of the Brooks
opinion when this case was briefed.